```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RONALD KETCHAM,                                      :
                 Plaintiff,                          :
                                                     :
v.                                                   :         **OPINION AND ORDER**
                                                     :
THE CITY OF MOUNT VERNON,                            :         17 CV 7140 (VB)
MICHAEL HUTCHINS, and ALLEN                          :
PATTERSON,                                           :
                 Defendants.                         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Ronald Ketcham brings this Section 1983 action against the City of Mount Vernon and two of its police officers, Michael Hutchins and Allen Patterson, alleging that Hutchins and Patterson used excessive force when they arrested him on March 28, 2017. Plaintiff also brings state law claims against Patterson and the City for assault and battery.

Before the Court is defendants' motion for summary judgment. (Doc. #43).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The parties submitted briefs, declarations with exhibits, and statements of material fact pursuant to Local Civil Rule 56.1, which reflect the following factual background.

Plaintiff is a retired United States Probation Officer who resides in New Rochelle, New York.

Defendants Hutchins and Patterson were officers with the Mount Vernon Police Department (the "MVPD") when the events relevant to this action occurred.

1

I.  Plaintiff's Arrest

On the afternoon of March 28, 2017, plaintiff was walking on Main Street in New Rochelle. He was outside a gas station that was enclosed by a chain link fence.

At the time, Officers Hutchins and Patterson were assigned to the MVPD warrant squad and were in New Rochelle searching for individuals with active arrest warrants. The officers were in plain clothes in an unmarked vehicle.

As the officers approached Main Street, they saw a man who fit the physical description of an individual with an active arrest warrant. Patterson pulled the car over.

The parties have different versions of what happened next.

The officers testified they approached plaintiff, with shields visible around their necks, and identified themselves as members of the MVPD. According to the officers, they informed plaintiff that he fit the description of someone they were looking for, and they asked to see plaintiff's identification. Plaintiff responded by asking the officers to identify themselves, which they did. The officers testified that at this point, plaintiff became belligerent.

According to the officers, to subdue plaintiff, they held him up against the fence. Nevertheless, plaintiff tried to push past them. In order to effectuate the arrest, Patterson testified he put plaintiff in an arm bar—a police technique used when "handcuffing someone to immobilize either arm"—and then secured one handcuff on his right wrist. (Doc. #48 ("Pl. Counterstatement"), Ex. D ("Patterson Dep.") at 110). Hutchins assisted Patterson by placing plaintiff's left wrist in the other handcuff.

While this was happening, plaintiff was shouting for bystanders to call the police. Patterson testified plaintiff was "actively resisting and fighting" the restraints and that "he matched [plaintiff's] force" to get him into the restraints. (Patterson Dep. at 104, 118).

2

Once the handcuffs were secured on both of plaintiff's wrists, the officers attempted to move him to their vehicle. However, plaintiff resisted and "tried to prevent [the officers] from putting him in the car." (Patterson Dep. at 120). Patterson testified that although he blocked plaintiff's head as they moved him into the vehicle, plaintiff was flailing, and as a result, plaintiff's head came into contact with the door frame. (Patterson Dep. at 121–23).

When plaintiff was finally inside the vehicle, he began to cooperate with the officers.

Plaintiff has a different recollection of these events. Plaintiff testified he heard brakes screech and saw someone approaching him. Plaintiff asserts the entire interaction on the street occurred with only one individual, whom he later identified as Officer Patterson.[1] Plaintiff testified that Patterson did not identify himself as law enforcement but rather told plaintiff he was "taking [him] in." (Ketcham Dep. at 36). Consequently, plaintiff testified he thought he was being mugged or abducted. And because he thought he was being mugged or abducted, plaintiff shouted to bystanders to call the police.

According to plaintiff, he repeatedly asked the individual to identify himself and he asked to see a uniformed police officer. Moreover, plaintiff insists he did not see anything resembling a police shield until two or three minutes into the incident. Even then, plaintiff was unsure whether the shield was real because he was unable to read it.

Plaintiff testified Officer Patterson threw him into the chain link fence even though he did not resist arrest at any point during the encounter. Next, plaintiff testified his arms were held behind his back and he was handcuffed. According to plaintiff, Officer Patterson then "put his hand on the side of [plaintiff's] head and . . . pushed [plaintiff's] head into the car," causing him to hit his head on the door frame. (Ketcham Dep. at 67)

---

[1] Plaintiff does not recall Officer Hutchins's involvement in the "physical interaction." (Pl. Counterstatement, Ex. A ("Ketcham Dep.") at 65).

3

Plaintiff further testified he was restrained in handcuffs for two to three minutes and that he told the officers the handcuffs were too tight. The officers did not recall whether plaintiff made such a complaint.

According to plaintiff, he eventually realized the individuals arresting him were indeed law enforcement officers and he began to cooperate.

The parties do not dispute what happened next. Once inside the vehicle, the officers told plaintiff he was being arrested pursuant to an active warrant for an individual fitting his physical description. Plaintiff, upon seeing an image of the individual, told the officers that although the person looked like him, they had the wrong man. Plaintiff provided identification, after which he was released from the handcuffs and exited the vehicle.

From beginning to end, the entire incident lasted between four and seven minutes.

II. Plaintiff's Injuries

Plaintiff testified that as a result of the incident, he suffered injuries to his head, knee, and wrists. Plaintiff's alleged head injury was due to contact with the vehicle, but plaintiff testified there was no bleeding, bruising, or broken skin. Plaintiff suffered slight bruising on his knee allegedly caused by the officers pushing plaintiff into the chain link fence. Plaintiff's wrist injuries—"broken" and "reddened skin," "bruising," and "discoloration"—were caused by the handcuffs. (Ketcham Dep. at 69, 77–80).

Following his release, plaintiff did not seek medical treatment or use any medication for his injuries. All of plaintiff's injuries healed within a few days.

## DISCUSSION

I. Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Excessive Force Claim

Defendants argue they are entitled to summary judgment because the officers' use of force was reasonable and plaintiff's injuries were de minimis as a matter of law.

The Court agrees.

 "The Supreme Court has held that 'claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" Washpon v. Parr, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "To determine whether the amount of force used is reasonable, a reviewing court must take into consideration the 'totality of the circumstances faced by the officer on the scene,'" id. (citing Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)), and "assess whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. (citing Graham v. Connor, 490 U.S. at 397). "The calculus of reasonableness must embody allowance for the fact that police officers

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 396–97.

"If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987). Indeed, courts in this Circuit have allowed claims to survive summary judgment where the only injury alleged is bruising. See Hayes v. New York City Police Dep't, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order).

However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 397. "[A] plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." Washpon v. Parr, 561 F. Supp. 2d at 406. In other words, plaintiff must establish that the amount of force used was more than de minimis. Rincon v. City of New York, 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005). In fact, "de minimis injury can serve as conclusive evidence that de minimis force was used." Washpon v. Parr, 561 F. Supp. 2d at 407. Thus, if a plaintiff suffers only de minimis injuries, summary judgment is appropriate. Smith v. City of New York, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), aff'd sub nom. Smith v. Tobon, 529 F. App'x 36 (2d Cir. 2013).

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." Usavage v. Port Auth. of New York & New Jersey, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013). Although "[i]t is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion . . . [and] to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out," Esmont v. City of New York, 371 F. Supp. 2d

7

202, 214–15 (E.D.N.Y. 2005), "overly tight handcuffing can constitute excessive force." Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

"In evaluating the reasonableness of a tight handcuffing claim, the court should consider whether: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Smith v. City of New York, 2010 WL 3397683, at *10. "A line of cases holds that minor injuries that result from tight handcuffs, such as temporary swelling, inflammation or soreness of an arrestee's wrists, are insufficient on their own to sustain a Fourth Amendment excessive force claim." Washpon v. Parr, 561 F. Supp. 2d at 407. Thus, although a plaintiff's wrist injuries "need not be severe or permanent," they "must be more than merely de minimis." Usavage v. Port Auth. of N.Y. & N.J., 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013).

"Courts may decide excessive force claims, including claims arising from allegations of excessively tight handcuffs, on motions for summary judgment." Usavage v. Port Auth. of New York & New Jersey, 932 F. Supp. 2d at 593.

Here, the officers' use of force was indisputably reasonable given the circumstances and plaintiff's de minimis injuries, including injuries from the handcuffs. Therefore, summary judgment for defendants is appropriate.

Plaintiff matched the physical description of an individual with an outstanding arrest warrant. He testified that when he was stopped by the police, he thought he was being abducted or robbed and thus, was not cooperative with the officers. Eventually, he was placed in handcuffs. Plaintiff's only evidence of injuries directly caused by the officers were bruising and broken skin from the handcuffs. And Officer Patterson testified any use of force by the officers was only enough to match the force plaintiff was exerting to evade arrest. Therefore, the

8

officers' use of the fence to prevent plaintiff from pushing past them was reasonable, as was placing plaintiff's right hand in an arm bar, handcuffing plaintiff, and inadvertently bumping plaintiff's head as he was placed in the vehicle.

The undisputed facts also demonstrate plaintiff suffered only de minimis injuries.

First, plaintiff testified the injury he sustained to his head from the contact with the vehicle did not cause bleeding, bruising, or broken skin. Second, plaintiff testified he suffered only "possibly bruising and discoloration" to his knee. (Ketcham Dep. at 83). Moreover, plaintiff's wrist injuries were limited to broken, reddened skin, and bruising, and plaintiff was handcuffed for only two to three minutes. Finally, plaintiff testified he did not seek medical treatment or use any medication for any of his injuries, and that the injuries healed within three to four days.

Accordingly, summary judgment on plaintiff's excessive force claim is warranted, because as a matter of law, the officers' force was not excessive.

III.     Assault and Battery Claims

The parties correctly agree plaintiff's state law claims for assault and battery rise and fall with plaintiff's excessive force claim. See Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.").

Thus, for the reasons already discussed, defendants are entitled to summary judgment on plaintiff's state law claims for assault and battery.

9

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #43) and close this case.

Dated: December 30, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge