UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RONALD KETCHAM,

                            Plaintiff,                         **OPINION AND ORDER**

       -against-                               17-cv-7140 (AEK)

THE CITY OF MOUNT VERNON, ALLEN
PATTERSON, and MICHAEL HUTCHINS,

                            Defendants.
-----------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      Following a two-day bench trial, the Court issued an Opinion and Order finding that Plaintiff Ronald Ketcham ("Plaintiff") failed to prove by a preponderance of the evidence that Defendants City of Mount Vernon, Allen Patterson ("Patterson"), and Michael Hutchins ("Hutchins") (collectively, "Defendants") were liable for excessive force pursuant to 42 U.S.C. § 1983 or for assault and battery pursuant to New York State law.  ECF No. 83 ("Opinion" or "Op."). Currently before the Court is Plaintiff's motion for reconsideration pursuant to Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 59 of the Federal Rules of Civil Procedure.  ECF No. 85.  For the reasons that follow, Plaintiff's motion is DENIED.

**BACKGROUND**

      The Court assumes the parties' familiarity with the Court's findings of fact in this matter, which are set forth in detail at pages 2-13 of the Opinion.  Relevant facts are recounted below as needed for the Court's analysis of the current motion.

## DISCUSSION

### I. Legal Standard Governing Motions for Reconsideration

"The standards governing Rule 59(e) and Local Civil Rule 6.3 are the same." *Logan v. New York*, No. 22-cv-8902 (LTS), 2023 WL 8618726, at *2 (S.D.N.Y. Dec. 13, 2023). "In the interests of finality and conservation of scarce judicial resources, the Court will grant reconsideration of its orders only in extraordinary circumstances." *Nutting v. Zimmer, Inc.*, No. 18-md-2859 (PAC), 2021 WL 4251906, at *1 (S.D.N.Y. Sept. 17, 2021) (cleaned up). "A party moving for reconsideration under Local Civil Rule 6.3 must 'point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)). "[Local Civil] Rule 6.3 is intended to ensure the finality of decisions and to prevent the practice of a losing party plugging the gaps of a lost motion with additional matters. A court must narrowly construe and strictly apply [Local Civil] Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent [Local Civil] Rule 6.3 from being used to advance different theories not previously argued . . . ." *Hinds County v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (cleaned up). "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted).

### II. Application of the Legal Standard

Plaintiff seeks reconsideration of the Court's Opinion on three grounds: (1) the Court misapplied the legal standard governing excessive force claims as articulated in *Graham v.*

2

*Connor*, 490 U.S. 386 (1989); (2) the Court wrongly based its decision regarding excessive force as to the tightness of the handcuffs on the extent of Plaintiff's injuries; and (3) the Court failed to make sufficiently specific findings regarding Plaintiff's resemblance to Dominic Uzillia ("Uzillia"), the individual for whom Patterson and Hutchins (the "Individual Defendants") had an arrest warrant, as required by Rule 52 of the Federal Rules of Civil Procedure. *See generally* ECF No. 86 ("Pl.'s Mem."). The Court addresses each of these arguments in turn.

    A.    The Court's Application of the *Graham* Factors

        1.    **Legal Standard Governing Excessive Force Claims**[1]

In the Opinion, the Court set forth the standard governing Plaintiff's excessive force claims. *See* Op. at 19-20. To reiterate, when an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation marks omitted). Proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

---

[1] As the Court stated in the Opinion, "[t]he elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" Op. at 25 (quoting *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (quotation marks omitted)). Accordingly, the Court's discussion in this Opinion and Order of the reasonableness of the force used by the Individual Defendants applies equally to Plaintiff's Section 1983 claim and his state law claims for assault and battery.

flight." *Id.*  These three considerations are known as the "*Graham* factors."  *See Brown v. City of New York*, 798 F.3d 94, 100, 102 (2d Cir. 2015).

"[R]easonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"—indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (cleaned up).  Ultimately, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

This reasonableness inquiry is an "objective" one: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  "*Graham* thus stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).

### 2. Objective Reasonableness of the Use of Force

In his motion for reconsideration, Plaintiff does not contend that the Court misstated the applicable legal standard; rather, he maintains that the Court erred by failing to properly assess the impact of certain factors in the analysis of whether the Individual Defendants' use of force was objectively reasonable.  The focus of Plaintiff's argument is that the Individual Defendants lacked probable cause to arrest him on March 28, 2017, and therefore any use of force was objectively unreasonable.  *See* Pl.'s Mem. at 8 ("[*P*]*robable cause is directly relevant to both issues*:  whether an arrest was lawful and whether the force used was excessive.") (emphasis in

original). More specifically, Plaintiff insists that the Court erred because (1) Plaintiff did not resemble Uzillia sufficiently to give rise to probable cause for his arrest; (2) the Individual Defendants failed to engage in a sufficient investigation of Plaintiff's identity prior to arresting him; (3) the Individual Defendants' failure to identify themselves negated the finding that Plaintiff was resisting arrest; and (4) the Individual Defendants' conduct exceeded the scope of a *Terry* stop. *See generally id.* Sections I.B.-I.E. Plaintiff's contentions miss the mark, however, in significant part because claims for false arrest are distinct from claims for excessive force. Indeed, prior to summary judgment briefing in this case, Plaintiff stipulated to the dismissal of his claims for false arrest and unlawful imprisonment, *see* ECF No. 38, and the trial therefore involved only claims for excessive force and assault and battery.

In evaluating a claim for the alleged use of excessive force during the course of an arrest, the lawfulness or unlawfulness of the arrest—*i.e.*, whether the defendant police officers had probable cause to effectuate the arrest—is not dispositive in assessing the reasonableness of the use of force by those officers. The Second Circuit has "made clear that the unlawfulness of an arrest does not make the force used to effectuate that arrest *per se* unreasonable and excessive under the Fourth Amendment." *Aponte v. Kanbur*, No. 20-624, 2021 WL 3854069, at *4 (2d Cir. Aug. 30, 2021) (summary order). In *Aponte*, the plaintiff contended that the district court erred "by instructing the jury that whether Kanbur and his fellow officers had a warrant for Aponte's arrest on August 10, 2015 was irrelevant to their assessment of whether Kanbur ultimately used excessive force." 2021 WL 3854069, at *3. But the panel rejected this argument, and "agree[d] with the district court that the fact that Kanbur and the other officers on the scene had no warrant was irrelevant in this excessive force case." *Id.* at *4. Importantly, the panel highlighted the fact that Aponte—like Plaintiff here—was not pursuing a false arrest claim

at the time of trial, and observed that "in any event, the inquiry in an excessive force case is different. In other words, the jury in [Aponte's] case was charged with determining whether Kanbur used force of any kind against Aponte and, if so, whether that force was objectively reasonable under the circumstances, not whether Kanbur had a lawful basis to either enter Aponte's apartment or arrest him." *Id.* It was not necessary for the finder of fact (the jury) in *Aponte* to even consider the absence of an arrest warrant "to properly assess the totality of the circumstances surrounding Kanbur's alleged use of excessive force . . . ." *Id.* (internal citation omitted).

The case law cited in *Aponte* reinforces the conclusion that false arrest and excessive force claims are distinct, and that whether or not probable cause exists is not the "central issue," Pl.'s Mem. at 8, in the analysis of objective reasonableness that Plaintiff makes it out to be. In *Zellner v. Summerlin*, 494 F.3d 344, 377-78 (2d Cir. 2007), the Second Circuit affirmed the district court's rejection of plaintiff's argument "that the jury should have been instructed that if it found [plaintiff] had been arrested without probable cause, it must find that any force used by defendants in the course of that arrest was excessive and thus must return a verdict in his favor on the excessive force claim." *See Aponte*, 2021 WL 3854069, at *4. Similarly, in *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006), the panel determined, in the qualified immunity context, that the district court misapprehended the law in this Circuit to be that "any force employed by a police officer would be unlawful so long as probable cause did not exist, even if the detainee had threatened the officer with significant harm." *See Aponte*, 2021 WL 3854069, at *4. And as a Ninth Circuit panel held in *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004), "[b]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force

6

claim, and vice-versa." *See Aponte*, 2021 WL 3854069, at *4. The Supreme Court also has suggested that "it would be going entirely too far to suggest that *any* Fourth Amendment violation that is connected to a reasonable use of force should create a valid excessive force claim." *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017) (emphasis in original). *See Aponte*, 2021 WL 3854069, at *4.

Much of Plaintiff's argument for reconsideration focuses on the premise that he did not bear a significant resemblance to Uzillia, the individual for whom the Individual Defendants had a valid arrest warrant. Notably, however, Plaintiff's counsel did not address this issue in the proposed findings of fact and conclusions of law prior to trial, *see* ECF No. 66, elicited no evidence at trial to attempt to establish the types of distinctions that are emphasized in the briefing on this motion, *see generally* ECF Nos. 93, 95 (Trial Transcripts ("Tr")), and made no points about the purported physical dissimilarities in closing arguments and rebuttals at the end of trial, *see generally* ECF No. 80. The evidence in the record regarding Plaintiff's resemblance to Uzillia comes from Plaintiff's own admissions: Plaintiff testified at trial that when he saw a photograph of Uzillia while he was in the back seat of the police vehicle, he "conceded at that time that [Uzillia] looked like [him]," Tr. at 99-100; additionally, Patterson testified at trial that while Plaintiff was in the police vehicle, Plaintiff observed him and Hutchins passing the picture of Uzillia between them, and when Patterson asked "doesn't that look like you?," Plaintiff agreed that it did, Tr. at 182. *See* Op. at 6 n.5 and 11.

Moreover, in *Aponte*, the Second Circuit reiterated that "the reasonableness of the use of force is examined from the objective standpoint of the police officer," and noted that "the arrestee's subjective belief regarding the situation" is not relevant to the determination of whether the use of force was excessive under the totality of the circumstances. 2021 WL

7

3854069, at *5 (citing *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) ("[A]n arrestee's subjective motive does not bear on how reasonable officers would have interpreted his [or her] behavior.")). The panel rejected Aponte's argument that the lawfulness of the police officer's "warrantless entry into his apartment bears on the reasonableness of [*Aponte's*] *belief* that he was not legally required to go anywhere with the officers who visited his home." *Id.* (emphasis in original). Similarly here, the relevant question is not whether Plaintiff believed that he was resisting arrest or believed that he was yelling and moving his body in an effort to avoid an unwanted interaction with strangers who were trying to abduct him. *See* Tr. at 80-81, 89-92. Rather, what is determinative of Plaintiff's claim is whether or not the Individual Defendants' use of force—viewing the circumstances with which they were confronted from the officers' standpoint—was objectively reasonable.

Accordingly, the Court reaffirms its conclusion that the Individual Defendants' use of force was objectively reasonable under the totality of the circumstances in this case, which include the undisputed facts that Patterson and Hutchins, with a valid arrest warrant in hand, approached Plaintiff with the mistaken understanding that he was Uzillia. As explained in the Opinion:

> Both Patterson and Hutchins testified that they interpreted Plaintiff's initial physical reaction—whether bending his knees or taking one step backwards—as the assumption of a fighting stance, even though Plaintiff had not raised his arms or balled his hands into fists. These similar (though not identical) elements of testimony from the officers are credible, and it is understandable that the officers understood Plaintiff to be positioning himself in a way that made it appear as though he was prepared to defend himself rather than voluntarily comply with police requests. Plaintiff's responses to Patterson's initial questions and statements—"who are you," and "I'm taking you in"—were challenging rather than compliant (asking Patterson "who are you," and responding "for what"), and Patterson and Hutchins reasonably believed they were interacting with Uzillia, a man for whom they had an active arrest warrant and who they believed resided nearby. Taking all of this evidence

8

> together, the Court finds that the lack of clarity by Patterson at the outset, combined with Plaintiff's significant resemblance to Uzillia, Plaintiff's defensive responses to Patterson's remarks, and Plaintiff's minor adjustments of his body in a manner that suggested a defensive posture led to the unfortunate series of events that followed.

Op. at 15-16.[2]

Plaintiff contends that the Court's finding that the Individual Defendants failed to identify themselves as police officers negated the finding that Plaintiff was resisting arrest for purposes of the third *Graham* factor. But this again speaks to Plaintiff's subjective belief regarding the March 28, 2017 incident, not the objective reasonableness of the Individual Defendants' view of Plaintiff's behavior under the circumstances. Although the Court did find that Patterson did not clearly identify himself, and recognized that the encounter between Plaintiff and the Individual Defendants likely would not have proceeded as it did had he done so, *see id.* at 14, the Court also noted that "Plaintiff acknowledged that he had some inkling during the encounter that Patterson was a police officer—he observed Patterson's badge as he approached, Tr. 75; he recognized the 'arm bar' as a law enforcement technique, Tr. 83-84; and he saw Patterson's properly holstered firearm, Tr. 86." *Id.* Ultimately, the Court was called upon to resolve the question of whether, viewing the situation from the Individual Defendants' points of view, their use of force in

---

[2] In the discussion of its credibility findings and assessment of key disputed issues, the Court noted that (1) during the time that he was handcuffed and placed against the fence, Plaintiff was "moving his head constantly from side to side," was "so agitated that he was yelling and screaming to such a degree that his voice became hoarse," and was "moving his torso to a substantial degree" as the Individual Defendants attempted to handcuff him, Op. at 16; (2) when Plaintiff was moved from the fence to the police vehicle, "in the context of the chaotic scene—with Plaintiff still screaming and yelling, not wanting to get into the car, and actively trying to prevent himself from being placed in the car . . . Plaintiff's head was inadvertently caused to come into contact with the door[,]" *id.* at 16-17; and (3) Plaintiff complained about the handcuffs being too tight "once he was in the car," but he "did not even realize that the handcuffs were on his wrists until he was inside of the car, and . . . the handcuffs were removed very shortly after he complained about them," *id.* at 18. All of these findings contributed to the legal conclusion that the force used by the Individual Defendants was objectively reasonable under the circumstances.

9

arresting Plaintiff was objectively reasonable. Patterson's standpoint was that of a police officer, wearing his shield around his neck and approaching a man who resembled someone for whom he and his partner had an arrest warrant, and who reacted to Patterson's approach and questions, both physically and verbally, in a resistant manner. By the time Hutchins, who had been parking the car, joined Patterson to assist in placing Plaintiff in handcuffs, Plaintiff was twisting his body, moving his head from side to side, and screaming. *See id.* at 16. Hutchins's standpoint was therefore that of a police officer, viewing his partner trying to effectuate the arrest of a man for whom they had an arrest warrant, who was actively resisting.

In the context of a bench trial, the Court, "[a]s the finder of fact, . . . is entitled to make credibility findings about the witnesses and testimony and to draw reasonable inferences from the evidence presented." *United States v. Asare*, 476 F. Supp. 3d 20, 26 (S.D.N.Y. 2020); *see Fantasia v. Montefiore New Rochelle*, No. 22-2940-cv, 2023 WL 7648330, at *3 (2d Cir. Nov. 15, 2023) (summary order) ("We give great deference to a district court's findings of fact following a bench trial, especially where, as here, those findings largely turn on credibility assessments of the testifying witnesses."). Here, the Court assessed the witnesses' credibility and drew reasonable inferences from the evidence presented, as it was entitled to do, and concluded that the Individual Defendants' use of some degree force to effectuate Plaintiff's arrest was objectively reasonable, as it was based on an objectively reasonable belief that Plaintiff, who looked like a man for whom they had an outstanding arrest warrant, was acting in a resistant manner. Plaintiff's motion for reconsideration based on the Court's application of the *Graham* factors is DENIED.

B.     **Excessive Force Based on the Tightness of the Handcuffs**

Plaintiff also contends that the Court specifically erred in its evaluation of the portion of Plaintiff's excessive force claims based on the tightness of the handcuffs. Pl.'s Mem. at 20-21. The Court disagrees.

Plaintiff first challenges the decision with respect to the handcuffs on the ground that "the Individual Defendants' use of force was unreasonable from the start," so there was "no justifiable reason" for placing Plaintiff in handcuffs in the first instance, and the injuries he suffered were "gratuitous." *Id.* at 20. Because, as explained in Section II.A.2, *supra*, the Court sees no basis to reconsider its determination that the Individual Defendants did *not* use excessive force "from the start" (or at all), this is not a viable challenge to the Court's decision regarding the Individual Defendants' use of handcuffs. As the Court explained in the Opinion:

> Plaintiff['s] . . . adoption of a defensive physical posture and his challenging responses to Patterson's questions and statements made it objectively reasonable, in light of all of the circumstances presented at that moment, for Patterson and Hutchins to initiate the process of attempting to physically restrain Plaintiff and take him into custody. At that point, Patterson and Hutchins were seeking to execute an arrest warrant for Uzillia, were still reasonably under the impression that Plaintiff *was* Uzillia, and were therefore taking steps that were reasonably necessary to effectuate the arrest. Then Plaintiff began to physically resist to a greater degree, moving and twisting his torso and moving his head, all while screaming at the top of his lungs, such that it took two officers a period of minutes to ultimately place Plaintiff into handcuffs. There is no question that some degree of force was used at this stage of the encounter, but in light of the Court's factual findings regarding Plaintiff's movement and conduct at this time, the Court concludes that the degree of force used by the officers to place Plaintiff in handcuffs in order to place him under arrest—including the use of the arm bar technique, the application of the handcuffs, and placing Plaintiff against the chain link fence—was objectively reasonable in light of the circumstances presented.

11

Op. at 20-21 (emphasis in original).  In other words, based on the Court's assessment of the totality of the circumstances, the Court concluded that the degree of force used, including the use of handcuffs, was objectively reasonable.

Next, Plaintiff challenges the Court's decision on the ground that the Court improperly focused on the extent of Plaintiff's injuries from the tightness of the handcuffs and therefore failed to properly evaluate whether the use of the handcuffs was objectively reasonable.  Pl.'s Mem. at 20-21.  But the Court, citing *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019)—a case that Plaintiff himself cites in his motion for reconsideration—*did* consider "whether an officer reasonably should have known during handcuffing that his use of force was excessive."  Op. at 22; *see also Cugini*, 941 F.3d at 613 ("A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both.").  As the Court further explained, again quoting *Cugini*, "[i]n this Circuit, where an officer's use of force in handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff manifests clear signs of [his] distress—verbally or otherwise—a fact finder may decide that the officer reasonably should have known that his use of force was excessive for purposes of establishing a Fourth Amendment violation."  Op. at 22 (quotation marks omitted) (emphasis in original).  Rather than focusing only on the extent of Plaintiff's injuries, the Court considered not only the objective reasonableness of the use of handcuffs under the circumstances, but also the evidence that Plaintiff complained only once to Patterson and Hutchins about the tightness of the handcuffs, and that after he did so, Patterson removed the handcuffs right away.  *See id.* (Plaintiff "testified that the handcuffs were removed 'within seconds' of him making his complaint.").

12

The Court then concluded its analysis by addressing the evidence regarding the extent of Plaintiff's wrist injuries. *Cugini* does not bar courts from considering this evidence as one of several factors in making a determination as to whether the use of handcuffs constituted excessive force. *See* 941 F.3d at 613. In fact, "the degree of injury to the arrestee's wrists" was described by the *Cugini* panel as one of the evidentiary factors that "may, indeed, prove useful to a district court in assessing the soundness of a handcuffing-based excessive force claim."[3] *Id.* The Second Circuit's earlier opinion in this case, as quoted by Plaintiff in his reconsideration motion, contains similar language: "the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 151 (2d Cir. 2021). Therefore, where, as here, the Court was sitting as the finder of fact following a bench trial, it was entirely appropriate for the Court to consider "the absence of serious injury" due to the tightness of the handcuffs. But as is evident from the Opinion, the Court did not rely solely on evidence regarding Plaintiff's degree of injury from the handcuffing in reaching the determination that the circumstances of the application of handcuffs through the course of the Individual Defendants' encounter with Plaintiff on March 28, 2017 did not constitute excessive force. Plaintiff's motion for reconsideration as to this issue is DENIED..[4]

---

[3] The *Cugini* panel indicated that whether "the arrestee's handcuffs were unreasonably tight" and whether "the defendants ignored the arrestee's pleas that the handcuffs were too tight" also were evidentiary factors that may "prove useful" in such cases. 941 F.3d at 613 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)).

[4] Plaintiff does not seek reconsideration of the Court's conclusion that the Individual Defendants' failure to double lock Plaintiff's handcuffs did not rise to the level of excessive force.

C.   **Sufficiency of the Factual Findings**

Finally, Plaintiff contends that the Court needed to provide a more detailed explanation of its factual finding that Plaintiff bore a "significant resemblance" to Uzillia. Pl.'s Mem. at 21-22. He asserts that an appellate court cannot evaluate this finding "because the trial record contains no two photographs (or even physical descriptions) to compare."[5] *Id.* at 22. Rule 52(a) of the Federal Rules of Civil Procedure provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "That rule requires the court to make sufficiently detailed findings to inform the appellate court of the basis of the decision and to permit intelligent appellate review." *Najjar Grp., LLC v. West 56th Hotel LLC*, 850 F. App'x 69, 75 n.4 (2d Cir. 2021) (summary order) (quotation marks omitted). Rule 52(a)(1) "does not require either punctilious detail or slavish tracing of the claims issue by issue and witness by witness." *Id.* (quotation marks omitted). "As a general rule courts are not required to make findings on issues the decision of which is unnecessary to the results they reach." *Id.* at 75 (cleaned up).

In the Opinion, the Court noted the Individual Defendants' testimony that they thought Plaintiff resembled Uzillia. *See* Op. at 3 ("As the officers traveled northbound in their vehicle along Main Street, Patterson indicated to Hutchins that he saw someone who fit Uzillia's description walking southbound on the sidewalk on Main Street, and told Hutchins to stop the car so they could investigate. Tr. 161-63, 285-86."), 12 ("Hutchins recalled that once Plaintiff was in the car, he got into the driver's seat, Patterson got into the passenger's seat, and before

---

[5] Of course, if Plaintiff's counsel believed that a photograph of Plaintiff's face was necessary to have a complete record, then counsel should have attempted to introduce such a photograph in evidence. Other photographs of Plaintiff, showing his injuries from the March 28, 2017 encounter, were received in evidence. *See* Tr. at 48-51.

14

Hutchins began to drive away, he turned around to Plaintiff and said, 'we been looking for you for a long time, Mr. Uzillia.' Tr. 293-94."). And as referenced above, the Court also noted Plaintiff's trial testimony that after being shown Uzillia's photograph by the Individual Defendants, he conceded that Uzillia's photograph looked like him, Tr. 99-100, and Patterson's testimony in which he recounted that Plaintiff agreed that the photograph of Uzillia looked like him, Tr. 182.

As explained in Section II.A.2, *supra*, the issue of whether the Individual Defendants had probable cause to arrest Plaintiff is not dispositive as to the question of whether the force used was objectively reasonable. Plaintiff provides no sufficient explanation as to why the Court's reliance on the parties' testimony regarding the admitted resemblance between Plaintiff and Uzillia is insufficient to support its finding that the Individual Defendants had an objectively reasonable belief that the man they were struggling to place under arrest was the same man for whom they had an outstanding arrest warrant. Nor does Plaintiff state what further detail regarding the basis for the Court's finding of resemblance is needed in order to facilitate appellate review of the Court's decision regarding Plaintiff's claims of excessive force. Rule 52(a)(1) is therefore not a basis for the Court to reconsider any aspect of its determinations in this matter, and Plaintiff's motion for reconsideration on this ground is also DENIED.

* * * * * *

In sum, Plaintiff's motion fails to satisfy the legal standard applicable to motions for reconsideration. He neither points to any change in the law or new evidence, and he does not demonstrate a need to correct clear error or prevent manifest injustice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration (ECF No. 85) is DENIED.

Dated: April 10, 2024
      White Plains, New York

SO ORDERED.

_____
ANDREW E. KRAUSE
United States Magistrate Judge